**In re CONSECO FINANCE SERVIC-
ING CORP. f/k/a Green Tree Fi-
nancial Servicing Corporation.**

No. 10–00–121–CV.

Court of Appeals of Texas,
Waco.

June 7, 2000.

Richard A. McKinney, Higier, Lautin, Foxman & McKinney, P.C., Addison, for Relator.

Ron Butler, Marlin, for Real Parties in Interest.

Before Chief Justice DAVIS Justice VANCE, and Justice GRAY.

## OPINION

VANCE, Justice.

Conseco Finance Servicing Corp. loaned Jody Grams money to purchase a manufactured home. When Jody and his wife, Candace, sued Conseco for violations of the Texas Debt Collection Act and the Texas Deceptive Trade Practices Act, Conseco invoked an arbitration clause contained in the sales contract. Respondent, Judge of the 82nd District Court, denied Conseco's motion to compel arbitration, and Conseco brings this mandamus proceeding asking us to order Respondent to grant that motion. Jody argues that his claims are not subject to arbitration because the arbitration clause in the contract is unconscionable and his statutory claims are not within its scope. Because the Texas Supreme Court has stated that an arbitration clause cannot be challenged in a court as unconscionable and because Jody's statutory claims "relate to" his contract with Conseco, we will direct Respondent to order the parties to arbitrate his claims. We will not require Candace's claims to be arbitrated because she is not a party to the contract with Conseco and Conseco has not attempted to show that she should be bound by that contract otherwise.

Jody purchased his home on August 12, 1997. The contract is a three-page pre-printed, fill-in-the-blank form. There are three parties listed: the buyer—Jody Grams, the seller—Budget Mobile Homes, and the assignee—Green Tree Financial Servicing Corp. (Conseco's predecessor). The contract defines "I" to be the buyer and "you" to be the seller and the assignee. The first page lists the details of the transaction, including the number and amounts of payments, the make, model, and serial number of the home, and states that Jody is giving a security interest in the home. The next two pages state the terms of the contract. By these provisions, Jody agrees to make payments on the home according to the schedule on the first page, to keep the home in good condition and to keep it fully insured by a policy payable to the seller. He also agrees that Conseco could accelerate the amount he owed if he defaulted in performing any obligation created by the contract.

The arbitration clause at issue is on the third page of the contract and provides, in full:

14. ARBITRATION: All disputes, claims or controversies arising from or

relating to this Contract or the parties thereto shall be resolved by binding arbitration by one arbitrator selected by you with my consent. This agreement is made pursuant to a transaction in interstate commerce and shall be governed by the Federal Arbitration Act at 9 U.S.C. Section 1. Judgment upon the award rendered may be entered in any court having jurisdiction. The parties agree and understand that they chose arbitration instead of litigation to resolve disputes. The parties understand that they have a right to litigate disputes in court, but that they prefer to resolve their disputes through arbitration except as provided herein. THE PARTIES VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT THEY HAVE TO A JURY TRIAL EITHER PURSUANT TO ARBITRATION UNDER THIS CLAUSE OR PURSUANT TO A COURT ACTION BY YOU (AS PROVIDED HEREIN). The parties agree and understand that all disputes arising under case law, statutory law and any other laws including, but not limited to all contract, tort and property disputes, will be subject to binding arbitration in accord with this Contract. The parties agree that the arbitrator shall have all powers provided by law, the Contract and the agreement of the parties. These powers shall include all legal and equitable remedies including, but not limited to, money damages, declaratory relief and injunctive relief. Notwithstanding anything hereunto the contrary, you retain an option to use judicial (filing a lawsuit) or non-judicial relief to enforce a security agreement relating to the Manufactured Home secured in a transaction underlying this arbitration agreement, to enforce the monetary obligation secured by the Manufactured Home or to foreclose on the Manufactured Home. The institution and maintenance of a lawsuit to foreclose upon any collateral, to obtain a monetary judgment or to enforce the security agreement shall not constitute a waiver of the right of any party to compel arbitration regarding any other dispute or remedy subject to arbitration in this Contract, including the filing of a counterclaim in a suit brought by you pursuant to this provision.

On November 12, 1999, the Grams filed suit against Conseco, alleging that it had violated both the Texas Debt Collection Act and the Deceptive Trade Practices Act. TEX. FIN.CODE ANN. § 392.301 (Vernon 1998); TEX. BUS. & COM.CODE ANN. §§ 17.46(b)(12), 17.50 (Vernon Supp. Pamph.2000). Conseco filed a motion to compel arbitration, relying on this clause to argue that the parties had agreed to arbitrate "all disputes, claims and controversies which arise from or relate to the Contract." Apparently, Respondent conducted a hearing on the motion to compel,[1] and denied Conseco's request. This mandamus proceeding followed.

### What law applies?

■ Both Texas and Federal public policy strongly favor the submission of disputes to arbitration. *D. Wilson Constr. Co. v. Cris Equip. Co., Inc.*, 988 S.W.2d 388, 393 (Tex.App.—Corpus Christi 1999, orig. proceeding). Both governing bodies have established specific statues to govern arbitration disputes. 9 U.S.C.A. § 1, *et seq.* (West 1999); TEX. CIV. PRAC. & REM. CODE ANN. § 171.001, *et seq.* (Vernon Supp.2000). Which statute applies to this contract has several implications. First, if Conseco's demand for arbitration comes

---

1. We say "apparently" because Conseco has not presented us with a reporter's record from a hearing on its motion even though the order denying that motion indicates that "[a] record was duly made." However, the parties agree that the only evidence Respondent had before him was the pleadings, including the Grams' verified pleading seeking a temporary restraining order, the exhibits attached to Conseco's motion to compel arbitration, and the exhibits attached to its brief in support of that motion. The parties agree that no other evidence was heard by Respondent during the course of the hearing.

within the ambit of the Federal Arbitration Act (FAA), it is entitled to seek review of the denial of that motion by mandamus. *Jack B. Anglin Co., Inc. v. Tipps,* 842 S.W.2d 266, 272 (Tex.1992). If its claim must be based on the Texas Act, mandamus is not appropriate because an interlocutory appeal is available. *Id.;* TEX. CIV. PRAC. & REM.CODE ANN. § 171.098(a)(1). Secondly, on the substance of the claim, Texas law provides for different restrictions on an arbitration clause than does the Federal statute. *See, e.g.,* TEX. CIV. PRAC. & REM.CODE ANN. § 171.002. Thus, depending upon which law governs, we must consider different requirements to determine if Respondent abused his discretion when he refused to order the dispute to arbitration.

■ The Federal act applies to any contract which "involves" interstate commerce. A contract "involves" interstate commerce if it "affects" interstate commerce, within the broadest meaning of the word approved by the United States Supreme Court. *Allied–Bruce Terminix Co. v. Dobson,* 513 U.S. 265, 273–74, 115 S.Ct. 834, 839, 130 L.Ed.2d 753 (1995). The "happenstance [of] whether the parties happened to think to insert a reference to interstate commerce in the document" is not determinative of whether the contract is governed by the FAA. *Id.,* 513 U.S. at 278, 115 S.Ct. at 842. Rather, the United States Supreme Court "insist[s] that the 'transaction' in fact 'involve[]' interstate commerce" to fall within the coverage of the act. *Id.,* 513 U.S. at 281, 115 S.Ct. at 843.

■ Although the United States Supreme Court requires that the transaction reflected in the contract involve interstate commerce in fact, it has also allowed the parties to "specify by contract the rules under which that arbitration will be conducted." *Volt Info. Sciences v. Board of Trustees,* 489 U.S. 468, 479, 109 S.Ct. 1248, 1256, 103 L.Ed.2d 488 (1989). On that basis, "[t]he parties may designate which arbitration act they wish to control pro-

ceedings under the contract, and the courts will honor that choice." *Russ Berrie and Co. v. Gantt,* 998 S.W.2d 713, 715 n. 6 (Tex.App.—El Paso 1999, no pet.). Here, the parties agreed in the contract that the arbitration would be governed by the FAA, and we will apply those provisions to this dispute. Thus, this proceeding is properly before us on Conseco's petition for a writ of mandamus.

### The law as applied in a trial court

■ The Federal Arbitration Act creates a substantive body of law that is applicable in state courts. *Perry v. Thomas,* 482 U.S. 483, 489, 107 S.Ct. 2520, 2525, 96 L.Ed.2d 426 (1987). A court called upon to determine if arbitration should be compelled under the FAA must determine (1) whether the parties agreed to arbitrate, and if so, (2) whether the scope of the agreement encompasses the asserted claims. *Chelsea Square Textiles, Inc. v. Bombay Dyeing and Manufacturing Co.,* 189 F.3d 289, 294 (2nd Cir.1999); *see also Leander Cut Stone Co. v. Brazos Masonry, Inc.,* 987 S.W.2d 638, 640 (Tex.App.—Waco 1999, no pet.). Additionally, the agreement to arbitrate may be avoided "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C.A. § 2; *Doctor's Associates, Inc. v. Casarotto,* 517 U.S. 681, 686, 116 S.Ct. 1652, 1656, 134 L.Ed.2d 902 (1996).

■ Texas procedure controls the decision by a Texas court when it is called on to decide if a disputed claim is subject to an arbitration clause under the Federal Act. *Jack B. Anglin,* 842 S.W.2d at 268. Thus, if the opposing party disputes the agreement to arbitrate, *i.e.,* claims that there is no agreement to arbitrate or, conceding that the agreement exists, raises a ground in law or in equity for the revocation of any contract, the court may decide the issue on the basis of affidavits, pleadings, discovery and stipulations, unless the material facts are controverted. *Leander Cut Stone,* 987 S.W.2d at 640. If the facts

are controverted, by opposing affidavit or otherwise admissible evidence, the trial court must conduct an evidentiary hearing to determine those disputed facts before deciding if there is an enforceable agreement to arbitrate between the parties. *Id.*

When addressing the second issue—whether the dispute falls within the scope of the parties' arbitration agreement—the court should analyze the agreement under standard contract construction principles. *Id.* Its focus should be on the factual allegations involved in the dispute and not on the legal causes of action raised by the parties. *Id.* As a matter of federal substantive law, any doubts as to whether the dispute falls within the scope of the arbitration agreement should be resolved in favor of arbitration. *Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 62 & n. 8, 115 S.Ct. 1212, 1218 & n. 8, 131 L.Ed.2d 76 (1995). As our sister court of appeals has observed:

> The presumption of arbitrability is particularly applicable where the clause is broad; that is, it provides for arbitration of "any dispute arising between the parties," or "any controversy or claim arising out of or relating to the contract thereof," or "any controversy concerning the interpretation, performance or application of the contract." [citations omitted]. In such instances, absent any express provisions excluding a particular grievance from arbitration, only the most forceful evidence of purpose to exclude the claim from arbitration can prevail.

*Babcock & Wilcox Co. v. PMAC, Ltd.,* 863 S.W.2d 225, 230 (Tex.App.—Houston [14th Dist.] 1993, writ denied); *see also Southwest Health Plan, Inc. v. Sparkman,* 921 S.W.2d 355, 358 (Tex.App.—Fort Worth 1996, no writ).

### Our review of the trial court's actions

"Mandamus issues only to correct a clear abuse of discretion or the violation of a duty imposed by law when there is no other adequate remedy by

law." *Walker v. Packer,* 827 S.W.2d 833, 839 (Tex.1992) (quoting *Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 917 (Tex.1985)); *In re Bishop,* 8 S.W.3d 412, 416 (Tex.App.—Waco 1999, orig. proceeding). When the trial court's decision rests on the resolution of factual issues or matters committed to the court's discretion, "[t]he relator must establish that the trial court could reasonably have reached only one decision." *Walker,* 827 S.W.2d at 839–40. A trial court's failure to correctly apply the FAA to the facts of a dispute constitutes an abuse of discretion for which there is no adequate remedy at law. *Jack B. Anglin,* 842 S.W.2d at 272–73.

If the trial court has held an evidentiary hearing and has resolved disputed issues of fact, we may not substitute our judgment on the facts for that of the trial court. *Walker,* 827 S.W.2d at 839. Thus, if the enforceability of the arbitration agreement was properly challenged and Respondent resolved disputed facts in route to determining that issue, we may disturb his decision only if it was "arbitrary and unreasonable." *Id.* at 840.

A review of a trial court's determination of the legal principles controlling its ruling, however, is much less deferential. A trial court has no discretion in determining what the law is or applying the law to the facts. *Id.* Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion, and may result in reversal by the extraordinary writ. *Id.; In re Monsanto Co.,* 998 S.W.2d 917, 921–22 (Tex.App.—Waco 1999, orig. proceeding). The scope of an unambiguous arbitration agreement is an issue of contract construction, thus, a question of law subject to *de novo* review on appeal. *Leander Cut Stone,* 987 S.W.2d at 640. Similarly, if the court was not required or not allowed to resolve fact issues to determine if the arbitration agreement was enforceable, but based its ruling on a pure issue of law, our

569

review of its decision on the first prong is much less deferential.

On a related matter, when a trial court's decision is based on a factual determination, we may not find that the court abused its discretion in the absence of a complete record from the hearing. *See Walker*, 827 S.W.2d at 837. If the court's decision does not require resolution of factual issues or if there is no indication that it received and considered evidence in arriving at its judgment, a complete record of the hearing is not required. *See id.* at 837 n. 3; *Barnes v. Whittington*, 751 S.W.2d 493, 495 (Tex.1988); *Humphreys v. Caldwell*, 881 S.W.2d 940, 944 (Tex.App.—Corpus Christi 1994, orig. proceeding).

### *Is there an enforceable agreement to arbitrate?*

Conseco attached a copy of the contract to its motion to compel arbitration. Thus, it has met its burden of presenting evidence of an arbitration agreement between it and Jody. *In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 573 (Tex.1999); *Leander Cut Stone*, 987 S.W.2d at 640. To avoid being compelled to arbitrate claims within the scope of that agreement, Jody must have come forward

with "grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C.A. § 2; *Casarotto*, 517 U.S. at 687, 116 S.Ct. at 1656; *Oakwood Mobile Homes*, 987 S.W.2d at 573. Because we do not have a reporter's record from the hearing before the trial court, we do not know what grounds Jody argued to avoid the arbitration clause. However, in this court, he advances only one reason that the clause is unenforceable: He claims that the clause was unconscionable when it was made because its terms potentially require arbitration of intentional torts and require him to arbitrate any claim he may have against Conseco but reserves Conseco's right to litigate most of its claims against him.

Although we are sympathetic to Jody's complaints regarding this arbitration clause,[2] our hands are tied by the Texas Supreme Court's decision in *Oakwood Mobile Homes*. According to the Court, "whether the terms and conditions of an arbitration agreement are themselves unconscionable is a matter which must be submitted to the designated arbitrator." *Oakwood Mobile Homes*, 987 S.W.2d at 573 n. 3.[3] Thus, in Texas, a claim

---

**2.** Courts have held that arbitration clauses which require the party with lesser bargaining power to arbitrate their claims but reserve the right to litigate the claims of the party with the greater power are unconscionable. *Iwen v. U.S. West Direct*, 293 Mont. 512, 977 P.2d 989 (1999); *Arnold v. United Companies Lending Corp.*, 204 W.Va. 229, 511 S.E.2d 854 (1998); *Ramirez v. Circuit City Stores, Inc.*, 90 Cal.Rptr.2d 916 (Cal.App.1999), *review granted*, 94 Cal.Rptr.2d 1, 995 P.2d 137 (Cal.2000).

**3.** Although this statement is contained in a footnote in a per curiam opinion and refers only to an unpublished El Paso Court of Appeals decision for support, we feel obligated to follow it. If we were writing on a blank slate, we would instead follow the United States Supreme Court's holding that "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements [by a court] without contravening" the enforcement provision of the FAA. *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687,

116 S.Ct. 1652, 1656, 134 L.Ed.2d 902 (1996). Unconscionability is a generally applied legal theory in Texas, which allows a court to "refuse to enforce the contract, or [to] enforce the remainder of the contract without the unconscionable clause, or [to] limit the application of any unconscionable clause as to avoid any unconscionable result." TEX. BUS. & COM.CODE ANN. § 2.302 (Vernon 1994). This section applies to the purchase of a mobile home. *See Apeco Corp. v. Bishop Mobile Homes, Inc.*, 506 S.W.2d 711, 717 (Tex.Civ.App.—Corpus Christi 1974, writ ref'd n.r.e.). Thus, unconscionability is included in the "grounds as exist at law or in equity for the revocation of any contract" which may be applied by a state court to invalidate an arbitration agreement. 9 U.S.C.A. § 2 (West 1999); *Casarotto*, 517 U.S. at 686, 116 S.Ct. at 1656. Our research has disclosed no other court that has taken the position that only the arbitrator has the authority to determine if the terms of the arbitration clause are unconscionable. We have found many courts that have ruled upon an argument based on un-

that the substance of an arbitration clause is unconscionable is not a ground which can be asserted in court to defeat a motion to compel arbitration as a matter of law. *Id.*

Because Jody asserts only a ground which is outside of the authority of Respondent to consider, it is irrelevant what evidence Respondent might have heard on the issue. Thus, we do not need a reporter's record from the hearing to conclude Respondent abused his discretion if he determined that the arbitration agreement was unenforceable because it is unconscionable. *Walker,* 827 S.W.2d at 837; *Barnes,* 751 S.W.2d at 495; *Humphreys,* 881 S.W.2d at 944.

### Are the claims in this suit within the scope of the arbitration agreement?

When he purchased the mobile home, Jody agreed to arbitrate "[a]ll disputes, claims or controversies arising from or relating to" the contract. This is a broad arbitration agreement, which does not exclude any of Jody's claims from its scope; thus, Jody was required to present "the most forceful evidence of purpose to exclude" his claim from arbitration to avoid its effect. *Babcock,* 863 S.W.2d at 230. Because the scope of the clause is a matter of contract construction, the only source that a court can look to for that "forceful evidence" is the terms of the contract itself, unless the clause is ambiguous. *See Leander Cut Stone,* 987 S.W.2d at 640. There is no claim made here that the clause is ambiguous. Thus, we construe the clause as a matter of law, again dispensing with the necessity of a record from the motion-to-compel hearing.

Jody argues that his claims for violations of the Debt Collection Act and the Deceptive Trade Practices Act are not arbitrable under this provision because (1) these claims are not based on the formation, negotiation, terms, or performance of the contract, but relate to Conseco's behavior after the contract was entered, and (2) his claims are statutory causes of action sounding wholly in intentional tort separate and apart from any dispute based on his contractual relationship with Conseco.

Although true that the claim raised by Jody is not based on the formation or the terms of the contract, the arbitration clause is not so limited. Rather, the clause provides for arbitration of any claims "arising from or relating to" the contract. Jody's complaint arises from Conseco's alleged efforts to collect the amounts due under the terms of the agreement. Absent the contract, there would be no relationship between Jody and Conseco, and there would have been no debt the collection of which caused the difficulty between them. *See American Employers' Ins. Co. v. Aiken,* 942 S.W.2d 156, 160 (Tex.App.—Fort Worth 1997, no writ). Therefore, we conclude that Jody's claims based on Conseco's acts in collecting the debt owed on the contract arise from or relate to the contract and so are within the scope of the arbitration clause. Furthermore, the Texas Supreme Court has held that claims under the DTPA fall within the scope of an arbitration agreement. *Jack B. Anglin,* 842 S.W.2d at 270–71.

Jody's second argument for finding that his claim is not within the scope of the arbitration clause is equally

conscionability. *See, e.g., Dobbins v. Hawk's Enterprises,* 198 F.3d 715 (8th Cir.1999); *Harris v. Green Tree Financial Corp.,* 183 F.3d 173 (3rd Cir.1999); *We Care Hair Development, Inc. v. Engen,* 180 F.3d 838 (7th Cir.1999); *Doctor's Associates, Inc. v. Hamilton,* 150 F.3d 157 (2nd Cir.1998); *Stedor Enterprises, Ltd. v. Armtex, Inc.,* 947 F.2d 727 (4th Cir. 1991); *Iwen v. U.S. West Direct,* 293 Mont. 512, 977 P.2d 989 (1999); *Arnold v. United Companies Lending Corp.,* 204 W.Va. 229, 511 S.E.2d 854 (1998); *Williams v. Aetna Finance Co.,* 83 Ohio St.3d 464, 700 N.E.2d 859 (1998); *Sosa v. Paulos,* 924 P.2d 357 (Utah 1996); *Buraczynski v. Eyring,* 919 S.W.2d 314 (Tenn.1996); *Stirlen v. Supercuts, Inc.,* 51 Cal. App.4th 1519, 60 Cal.Rptr.2d 138 (1997); *Powertel, Inc. v. Bexley,* 743 So.2d 570 (Fla. App.1999). Most have rejected the claim.

unavailing. Although there was some debate as to whether statutory claims were exempt from arbitration, "[i]t is by now clear that statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26, 111 S.Ct. 1647, 1652, 114 L.Ed.2d 26 (1991). Only if *"Congress* itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue" may a party avoid its bargain to arbitrate its claims. *Id.* (emphasis added). However, because the FAA preempts state laws to the contrary, a state may not avoid the application of the FAA to its statutory claims by its own acts. *See Jack B. Anglin,* 842 S.W.2d at 271 (holding that the FAA preempts the nonwaiver provisions of the DTPA to the extent it would prevent or restrict enforcement of an arbitration agreement). Thus, although a federal statutory claim may escape an arbitration clause that is subject to the FAA, depending upon Congress's intent, a state statutory cause of action, such as Jody's claim for violations of the Texas Debt Collections Act, may not.

### *To what relief is Conseco entitled?*

■ We have concluded that Jody cannot show that the arbitration agreement in the contract with Conseco is unconscionable and has failed to show that his claims are not within the scope of that clause. Thus, Respondent abused his discretion when he failed to grant Conseco's motion to compel arbitration of Jody's claims. Conseco has no adequate remedy at law to correct this abuse of discretion. Thus, it is entitled to a writ of mandamus compelling Respondent to grant the motion and order that Jody's claims be submitted to arbitration.[4]

■ Conseco goes further than merely asking that Jody be compelled to submit to arbitration. First, it also asks that Candace be required to arbitrate her claims. However, the contract is between only Jody and Conseco. Candace is not a party to it. Conseco has not presented any argument or authority which would allow it to force Candace to arbitrate any claims she may have against it in the absence of an agreement with Conseco to do so. Thus, we conclude that Respondent did not err in refusing to require Candace to submit her claims to arbitration, and we will not instruct him to do so. *Pepe Int'l Dev. Co. v. Pub Brewing Co.,* 915 S.W.2d 925, 931 (Tex.App.—Houston [1st Dist.] 1996, no writ); *Prudential–Bache Securities, Inc. v. Garza,* 848 S.W.2d 803, 807 (Tex. App.—Corpus Christi 1993, orig. proceeding).

Conseco also asks that we issue an order requiring that Respondent dismiss both Jody's and Candace's claims with prejudice if they have not submitted to arbitration within thirty days of Respondent's order compelling arbitration. Conseco presents no authority or argument justifying this request. Therefore, this relief is denied.

### *Conclusion*

Respondent is directed to withdraw his order denying Conseco's motion to compel arbitration and order that Jody's claims be submitted to arbitration. Confident that Respondent will comply, the writ will issue only if he fails to do so within fourteen days of this opinion.

---

4. Although the Civil Practice and Remedies Code provides that the court should "order the parties to arbitrate," Jody, as the party seeking relief, has the burden to go forward with the arbitration after Respondent grants Conseco's motion to compel arbitration of his claims. TEX. CIV. PRAC. & REM.CODE ANN. § 171.021(a) (Vernon Supp.2000); *In re Bruce Terminix Co.,* 988 S.W.2d 702, 705–06 (Tex.1998).